752 So.2d 762 (1999)
Shirley POSECAI
v.
WAL-MART STORES, INC. d/b/a Sam's Wholesale Club and Joe Doe.
No. 99-C-1222.
Supreme Court of Louisiana.
November 30, 1999.
*764 Frederick R. Campbell, Geoffrey Jacob Orr, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, Counsel for Applicant.
Joseph Paul Demarest, Angela Ceclia Imbornone, Favret, Demarest, Russo & Lutkewitte, New Orleans, Counsel for Respondent.
MARCUS, Justice[*]
Shirley Posecai brought suit against Sam's Wholesale Club ("Sam's") in Kenner after she was robbed at gunpoint in the store's parking lot. On July 20, 1995, Mrs. Posecai went to Sam's to make an exchange and to do some shopping. She exited the store and returned to her parked car at approximately 7:20 p.m. It was not dark at the time. As Mrs. Posecai was placing her purchases in the trunk, a man who was hiding under her car grabbed her ankle and pointed a gun at her. The unknown assailant instructed her to hand over her jewelry and her wallet. While begging the robber to spare her life, she gave him her purse and all her jewelry. Mrs. Posecai was wearing her most valuable jewelry at the time of the robbery because she had attended a downtown luncheon earlier in the day. She lost a two and a half carat diamond ring given to her by her husband for their twenty-fifth wedding anniversary, a diamond and ruby bracelet and a diamond and gold watch, all valued at close to $19,000.
When the robber released Mrs. Posecai, she ran back to the store for help. The Kenner Police Department was called and two officers came out to investigate the incident. The perpetrator was never apprehended and Mrs. Posecai never recovered her jewelry despite searching several pawn shops.
At the time of this armed robbery, a security guard was stationed inside the store to protect the cash office from 5:00 p.m. until the store closed at 8:00 p.m. He could not see outside and Sam's did not have security guards patrolling the parking lot. At trial, the security guard on duty, Kenner Police Officer Emile Sanchez, testified that he had worked security detail at Sam's since 1986 and was not aware of any similar criminal incidents occurring in Sam's parking lot during the nine years prior to the robbery of Mrs. Posecai. He further testified that he did not consider Sam's parking lot to be a high crime area, but admitted that he had not conducted a study on the issue.
The plaintiff presented the testimony of two other Kenner police officers. Officer Russell Moran testified that he had patrolled the area around Sam's from 1993 to 1995. He stated that the subdivision behind Sam's, Lincoln Manor, is generally known as a high crime area, but that the Kenner Police were rarely called out to Sam's. Officer George Ansardi, the investigating officer, similarly testified that Lincoln Manor is a high crime area but explained that Sam's is not considered a high crime location. He further stated that to his knowledge none of the other businesses in the area employed security guards at the time of this robbery.
An expert on crime risk assessment and premises security, David Kent, was qualified and testified on behalf of the plaintiff. It was his opinion that the robbery of Mrs. Posecai could have been prevented by an exterior security presence. He presented crime data from the Kenner Police Department *765 indicating that between 1989 and June of 1995 there were three robberies or "predatory offenses"[1] on Sam's premises, and provided details from the police reports on each of these crimes.[2] The first offense occurred at 12:45 a.m. on March 20, 1989, when a delivery man sleeping in his truck parked in back of the store was robbed. In May of 1992, a person was mugged in the store's parking lot. Finally, on February 7, 1994, an employee of the store was the victim of a purse snatching, but she indicated to the police that the crime was related to a domestic dispute.
In order to broaden the geographic scope of his crime data analysis, Mr. Kent looked at the crime statistics at thirteen businesses on the same block as Sam's, all of which were either fast food restaurants, convenience stores or gas stations. He found a total of eighty-three predatory offenses in the six and a half years before Mrs. Posecai was robbed. Mr. Kent concluded that the area around Sam's was "heavily crime impacted," although he did not compare the crime statistics he found around Sam's to any other area in Kenner or the New Orleans metro area.
Mrs. Posecai contends that Sam's was negligent in failing to provide adequate security in the parking lot considering the high level of crime in the surrounding area. Seeking to recover for mental anguish as well as for her property loss, she alleged that after this incident she had trouble sleeping and was afraid to go out by herself at night. After a bench trial, the trial judge held that Sam's owed a duty to provide security in the parking lot because the robbery of the plaintiff was foreseeable and could have been prevented by the use of security. A judgment was rendered in favor of Mrs. Posecai, awarding $18,968 for her lost jewelry and $10,000 in general damages for her mental anguish. The trial judge further ruled that Sam's was 75% at fault and the unknown perpetrator was only 25% at fault. Sam's appealed. The court of appeal found that the trial judge erred in apportioning fault between Sam's and the criminal who intentionally robbed Mrs. Posecai. It amended the judgment to find Sam's solely at fault for the damages suffered by the plaintiff and affirmed the judgment as amended.[3] Upon Sam's application, we granted certiorari to review the correctness of that decision.[4]
The sole issue presented for our review is whether Sam's owed a duty to protect Mrs. Posecai from the criminal acts of third parties under the facts and circumstances of this case.
This court has adopted a duty-risk analysis to determine whether liability exists under the particular facts presented. Under this analysis the plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached. Syrie v. Schilhab, 96-1027, p. 4-5 (La.5/20/97), 693 So.2d 1173, 1176-77; Berry v. State, 93-2748, p. 4 (La.5/23/94), 637 So.2d 412, 414. Under the duty-risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. LeJeune v. Union Pacific R.R., 97-1843, p. 6 (La.4/14/98), 712 So.2d 491, 494.
*766 A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Meany v. Meany, 94-0251, p. 6 (La.7/5/94), 639 So.2d 229, 233. Whether a duty is owed is a question of law. Peterson v. Gibraltar Sav. & Loan, 98-1601, 98-1609, p. 7 (La.5/18/99), 733 So.2d 1198, 1204; Mundy v. Dep't of Health & Human Resources, 620 So.2d 811, 813 (La.1993); Faucheaux v. Terrebonne Consol. Gov't, 615 So.2d 289, 292 (La.1993). In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. See Socorro v. City of New Orleans, 579 So.2d 931, 938 (La.1991). The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving. See Meany, 639 So.2d at 233; Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151, 1161 (La.1988); Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983).
This court has never squarely decided whether business owners owe a duty to protect their patrons from crimes perpetrated by third parties.[5] It is therefore helpful to look to the way in which other jurisdictions have resolved this question. Most state supreme courts that have considered the issue agree that business owners do have a duty to take reasonable precautions to protect invitees from foreseeable criminal attacks.[6]
We now join other states in adopting the rule that although business owners are not the insurers of their patrons' safety, they do have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable. We emphasize, however, that there is generally no duty to protect others from the criminal activities of third persons. See Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La. 1984). This duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry.
Other jurisdictions have resolved the foreseeability issue in a variety of ways, but four basic approaches have emerged. See Delta Tau Delta v. Johnson, 712 N.E.2d 968, 971-73 (Ind.1999); Krier v. Safeway Stores 46, Inc., 943 P.2d 405, 413-15 (Wyo.1997). The first approach, although somewhat outdated, is known as the specific harm rule. See Delta Tau *767 Delta, 712 N.E.2d at 971; McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 895-96 (Tenn.1996). According to this rule, a landowner does not owe a duty to protect patrons from the violent acts of third parties unless he is aware of specific, imminent harm about to befall them. See Delta Tau Delta, 712 N.E.2d at 971; McClung, 937 S.W.2d at 895-96. Courts have generally agreed that this rule is too restrictive in limiting the duty of protection that business owners owe their invitees. See Delta Tau Delta, 712 N.E.2d at 971; McClung, 937 S.W.2d at 899.
More recently, some courts have adopted a prior similar incidents test. See Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756-57 (Tex.1998); Sturbridge Partners, Ltd. v. Walker, 267 Ga. 785, 482 S.E.2d 339, 341 (1997); Polomie v. Golub Corp., 226 A.D.2d 979, 640 N.Y.S.2d 700, 701 (N.Y.App.Div.1996). Under this test, foreseeability is established by evidence of previous crimes on or near the premises. See Timberwalk, 972 S.W.2d at 757; Polomie, 640 N.Y.S.2d at 701. The idea is that a past history of criminal conduct will put the landowner on notice of a future risk. Therefore, courts consider the nature and extent of the previous crimes, as well as their recency, frequency, and similarity to the crime in question. See Timberwalk, 972 S.W.2d at 757; Polomie, 640 N.Y.S.2d at 701. This approach can lead to arbitrary results because it is applied with different standards regarding the number of previous crimes and the degree of similarity required to give rise to a duty. See Delta Tau Delta, 712 N.E.2d at 972; Krier, 943 P.2d at 414.
The third and most common approach used in other jurisdictions is known as the totality of the circumstances test. See Delta Tau Delta, 712 N.E.2d at 973; Krier, 943 P.2d at 415; Clohesy v. Food Circus Supermkts., 149 N.J. 496, 694 A.2d 1017, 1027 (1997); Maguire v. Hilton Hotels Corp., 79 Hawai'i 110, 899 P.2d 393, 399 (1995); Whittaker v. Saraceno, 418 Mass. 196, 635 N.E.2d 1185, 1188 (1994); Seibert v. Vic Regnier Builders, Inc., 253 Kan. 540, 856 P.2d 1332, 1339 (1993). This test takes additional factors into account, such as the nature, condition, and location of the land, as well as any other relevant factual circumstances bearing on foreseeability. See Delta Tau Delta, 712 N.E.2d at 972; Clohesy, 694 A.2d at 1028; Krier, 943 P.2d at 414. As the Indiana Supreme Court explained, "[a] substantial factor in the determination of duty is the number, nature, and location of prior similar incidents, but the lack of prior similar incidents will not preclude a claim where the landowner knew or should have known that the criminal act was foreseeable." Delta Tau Delta, 712 N.E.2d at 973. The application of this test often focuses on the level of crime in the surrounding area and courts that apply this test are more willing to see property crimes or minor offenses as precursors to more violent crimes. See Clohesy, 694 A.2d at 1028. In general, the totality of the circumstances test tends to place a greater duty on business owners to foresee the risk of criminal attacks on their property and has been criticized "as being too broad a standard, effectively imposing an unqualified duty to protect customers in areas experiencing any significant level of criminal activity." McClung, 937 S.W.2d at 900.
The final standard that has been used to determine foreseeability is a balancing test, an approach which has been adopted in California and Tennessee. This approach was originally formulated by the California Supreme Court in Ann M. v. Pacific Plaza Shopping Center in response to the perceived unfairness of the totality test. See 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 214-15 (1993). The balancing test seeks to address the interests of both business proprietors and their customers by balancing the foreseeability of harm against the burden of imposing a duty to protect against the criminal acts of third persons. See Ann M., 25 Cal. Rptr.2d 137, 863 P.2d at 215; McClung, *768 937 S.W.2d at 902. The Tennessee Supreme Court formulated the test as follows: "In determining the duty that exists, the foreseeability of harm and the gravity of harm must be balanced against the commensurate burden imposed on the business to protect against that harm. In cases in which there is a high degree of foreseeability of harm and the probable harm is great, the burden imposed upon defendant may be substantial. Alternatively, in cases in which a lesser degree of foreseeability is present or the potential harm is slight, less onerous burdens may be imposed." McClung, 937 S.W.2d at 902. Under this test, the high degree of foreseeability necessary to impose a duty to provide security, will rarely, if ever, be proven in the absence of prior similar incidents of crime on the property. See Ann M., 25 Cal. Rptr.2d 137, 863 P.2d at 215; McClung, 937 S.W.2d at 902.
We agree that a balancing test is the best method for determining when business owners owe a duty to provide security for their patrons. The economic and social impact of requiring businesses to provide security on their premises is an important factor. Security is a significant monetary expense for any business and further increases the cost of doing business in high crime areas that are already economically depressed. Moreover, businesses are generally not responsible for the endemic crime that plagues our communities, a societal problem that even our law enforcement and other government agencies have been unable to solve. At the same time, business owners are in the best position to appreciate the crime risks that are posed on their premises and to take reasonable precautions to counteract those risks.
With the foregoing considerations in mind, we adopt the following balancing test to be used in deciding whether a business owes a duty of care to protect its customers from the criminal acts of third parties. The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.
The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises.
In the instant case, there were only three predatory offenses on Sam's premises in the six and a half years prior to the robbery of Mrs. Posecai. The first of these offenses occurred well after store hours, at almost one o'clock in the morning, and involved the robbery of a delivery man who was caught unaware as he slept near Sam's loading dock behind the store. In 1992, a person was mugged while walking through the parking lot. Two years later, an employee of the store was attacked in the parking lot and her purse was taken, apparently by her husband. A careful consideration of the previous incidents of predatory offenses on the property reveals that there was only one other crime in Sam's parking lot, the mugging in 1992, that was perpetrated against a Sam's customer and that bears any similarity to the crime that occurred in this case. Given the large number of customers that *769 used Sam's parking lot, the previous robbery of only one customer in all those years indicates a very low crime risk. It is also relevant that Sam's only operates during daylight hours and must provide an accessible parking lot to the multitude of customers that shop at its store each year. Although the neighborhood bordering Sam's is considered a high crime area by local law enforcement, the foreseeability and gravity of harm in Sam's parking lot remained slight.
We conclude that Sam's did not possess the requisite degree of foreseeability for the imposition of a duty to provide security patrols in its parking lot. Nor was the degree of foreseeability sufficient to support a duty to implement lesser security measures.[7] Accordingly, Sam's owed no duty to protect Mrs. Posecai from the criminal acts of third parties under the facts and circumstances of this case. Having found that no duty was owed, we do not reach the other elements of the dutyrisk analysis that must be proven in establishing a negligence claim.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. It is ordered that judgment be rendered in favor of Wal-Mart Stores, Inc. d/b/a Sam's Wholesale Club and against Shirley Posecai, dismissing plaintiff's suit at her cost.
JOHNSON, J., concurs and assigns reasons.
LEMMON, J., concurs and assigns reasons.
LEMMON, J., Concurring
A merchant has the duty to exercise reasonable care to discover that criminal acts by third persons are likely to occur on the merchant's premises and to take adequate steps to protect customers when and where such conduct is reasonably foreseeable. See 2 Restatement (Second) of Torts § 344 (1965). If the place and character of the merchant's business, considered with past experience, is such that the merchant should reasonably anticipate criminal conduct by third persons, generally or at some particular time or place on the premises, the merchant should take appropriate precautions and provide reasonable security measures and, if necessary, a reasonably sufficient number of security persons to afford reasonable protection. Id. at cmt. f.
In the present case, the character of defendant's high volume retail business operation (as compared to nearby small retail and service operations), in close proximity to a high crime area, provided cause for concern about the safety of customers, particularly in the parking lot where defendant's 1994 corporate survey had shown that the vast majority of criminal offenses were being perpetrated nationally against customers and employees. Nevertheless, because defendant had experienced virtually no criminal activity in the exterior area of this particular store during the past six years, defendant did not act unreasonably by failing to provide outside security guards and surveillance cameras, at least in daylight hours.
JOHNSON, J., Concurring.
The Court has used this vehicle to set out a rule lower courts must follow when *770 deciding whether business owners owe a duty to their patrons to protect them from injuries caused by third persons.
The majority discusses four approaches to determine the duty owed by a business owner to an invitee, then selects the more narrow balancing test because of the economic and social impact of requiring business owners to provide security in high crime areas. Only California and Tennessee have adopted the balancing test. But as the majority of states[1] have recognized, this type of balancing ignores the many variables of any incident which the totality of circumstances test acknowledges. In my opinion, the totality of circumstances test is the more appropriate test for determining a duty between a business owner and an invitee.
The totality of circumstances test is best suited for resolving this question. The totality of the circumstances test takes all factors of an incident into account when evaluating the issue of duty. See Delta Tau Delta v. Johnson, 712 N.E.2d 968 (Ind.1999); Seibert v. Vic Regnier Builders, Inc., 253 Kan. 540, 856 P.2d 1332 (1993). It incorporates the specific harm and prior similar incidents tests as factors to consider when determining whether a business owes a duty to an invitee without arbitrarily limiting the inquiry to a limited set of factors. Delta Tau Delta, 712 N.E.2d at 973. It additionally takes into account the physical characteristics of the premises (i.e.lighting, fencing), other security measures, the location of the premises, the nature of the operation of business, and the owner's observations regarding criminal activity. Id. While this approach does not require a business to ensure an invitee's safety, it does require that reasonable measures be taken to prevent foreseeable criminal acts against an invitee.
While I agree with the majority's conclusion that the defendant, Sam's Wholesale Club, did not have a duty to provide security patrols in its parking lot under the facts of this case, the majority's analysis, using the balancing test to arrive at this conclusion, is flawed. I would adopt the totality of circumstances test to determine defendant's duty.
NOTES
[*] Knoll, J., not on panel. Rule IV, Part 2, § 3.
[1] As used in this opinion, the term "predatory offenses" refers to crimes against the person.
[2] Mr. Kent mentioned that the police department's crime print-out also showed that ninety property offenses were reported from Sam's premises during this same period, but his testimony is unclear and he did not offer any further explanation. The court of appeal interpreted this testimony to refer to the amount of crime in the entire grid area where Sam's was located, and the plaintiff did not dispute that finding in this court.
[3] 98-1013 (La.App. 5th Cir.3/30/99), 731 So.2d 438.
[4] 99-1222 (La.6/25/99), 746 So.2d 611.
[5] In Harris v. Pizza Hut of Louisiana, Inc., this court noted that "[t]he issue of whether a [business] which had suffered a large number of [prior crimes] and possibly injury to patrons would come under such a duty [to provide a security guard] is left for decision at another time...." 455 So.2d 1364, 1372 n. 16 (La.1984).
[6] See Delta Tau Delta v. Johnson, 712 N.E.2d 968, 973 (Ind.1999); Doe v. Gunny's Ltd. Partnership, 256 Neb. 653, 593 N.W.2d 284, 289 (1999); Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex.1998); Clohesy v. Food Circus Supermkts., 149 N.J. 496, 694 A.2d 1017, 1021 (1997); Sturbridge Partners, Ltd. v. Walker, 267 Ga. 785, 482 S.E.2d 339, 341 (1997); Nivens v. 7-11 Hoagy's Corner, 133 Wash.2d 192, 943 P.2d 286, 292-93 (1997); McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 899 (Tenn.1996); Doe v. Wal-Mart Stores, Inc., 198 W.Va. 100, 479 S.E.2d 610, 616-17 (1996) (per curiam); Zueger v. Carlson, 542 N.W.2d 92, 97 (N.D. 1996); Maguire v. Hilton Hotels Corp., 79 Hawai'i 110, 899 P.2d 393, 397 (1995); Whittaker v. Saraceno, 418 Mass. 196, 635 N.E.2d 1185, 1187 (1994); Ann M. v. Pac. Plaza Shopping Ctr., 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 213-14 (1993); Seibert v. Vic Regnier Builders, Inc., 253 Kan. 540, 856 P.2d 1332, 1338 (1993); Doud v. Las Vegas Hilton Corp., 109 Nev. 1096, 864 P.2d 796, 799 (1993); Taco Bell, Inc. v. Lannon, 744 P.2d 43, 47-48 (Colo.1987); Jardel Co., Inc. v. Hughes, 523 A.2d 518, 525 (Del.1987); Martinko v. H-N-W Assoc., 393 N.W.2d 320, 321-22 (Iowa 1986).
[7] We reject the court of appeals' finding that Sam's assumed a duty to protect its patrons from crime when it hired a security officer to guard its cash office. This finding relies on an erroneous interpretation of our decision in Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). Pizza Hut does not stand for the proposition that a business assumes the duty to protect its customers from the criminal acts of third persons merely because it undertakes some security measures. Rather, Pizza Hut was an ordinary negligence case, holding that a security guard employed by a business must exercise reasonable care for the safety of the business' patrons and breaches that duty when his actions cause an escalation in the risk of harm. In Pizza Hut, the restaurant's security guard was negligent because he heightened the risk of harm to Pizza Hut's customers by provoking gunfire from armed robbers who had entered the restaurant.
[1] The majority of states utilize the totality of circumstances test in determining foreseeability of criminal acts while only two states have chosen to adopt the more restrictive test. See Maguire v. Hilton Hotels Corp., 79 Hawaii 110, 899 P.2d 393 (1995); Sharp v. W.H. Moore, Inc., 118 Idaho 297, 796 P.2d 506 (1990); Seibert, supra, Whittaker v. Saraceno, 418 Mass. 196, 635 N.E.2d 1185 (1994); Gans v. Parkview Plaza Partnership, 253 Neb. 373, 571 N.W.2d 261 (1997); Doud v. Las Vegas Hilton Corp., 109 Nev. 1096, 864 P.2d 796 (1993); Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 694 A.2d 1017 (1997); Small v. McKennan Hosp., 437 N.W.2d 194 (S.D.1989); Compare McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891(Tenn.1996), Delta Tau Delta, 712 N.E.2d 968.