793 So.2d 215 (2001)
Marion LEE, Individually, and on Behalf of Her Deceased Son, Albert Lee
v.
B & B VENTURES D/B/A Prime Time Disco, Stanley Gauthier, Bruce Kirkland and William Garibaldi and Their Insurer, Scottsdale Insurance Company.
No. 2000-CA-1734.
Court of Appeal of Louisiana, Fourth Circuit.
May 23, 2001.
Rehearing Denied September 24, 2001.
Joseph W. Thomas, Law Offices of Joseph W. Thomas, New Orleans, Counsel for Plaintiff/Appellee.
Trevor G. Bryan, Bryan & Jupiter, New Orleans, Counsel for Defendant/Appellant.
Court composed of Judge MIRIAM G. WALTZER, Judge TERRI F. LOVE, Judge DAVID S. GORBATY.
GORBATY, J.
In this appeal, the Orleans Parish School Board ("OPSB") contends that the trial court erred in finding that the OPSB's failure to provide additional security was a contributing cause in fact of Albert Lee's death. For the reasons set forth below, we reverse the portion of the judgment pertaining to the OPSB and affirm as to Stanley Gauthier.

FACTS AND PROCEDURAL HISTORY
On November 25, 1987, Albert Lee, a seventeen-year-old high school student, attended a fund-raising event at the Prime Time Disco sponsored by the George Washington Carver Middle School, a junior high school owned and operated by OPSB. The club, which catered to young people and did not serve alcohol, was owned by B & B Ventures ("B & B") and operated by Bruce Kirkland and William Garibaldi, the owners of B & B. Kirkland agreed to provide use of the premises and one non-uniformed security guard. The security guard operated the metal detector, and was expected to patrol inside and outside the building. He was also in *216 charge of directing traffic away from the facility. Usually, for similar events, the operator of the disco provided as many as five uniformed security guards, including three uniformed New Orleans Police officers. OPSB did not hire additional security, but did provide six adult chaperones at the dance.
During the event, two females began arguing, and as a result, the teachers decided to end the dance and ordered everyone to leave. The crowd dispersed into the parking lot, and Lee got into his car. He yelled at Stanley Gauthier, who was standing behind his vehicle, to get out of the way so he could back out. Gauthier, who had also attended the dance, came up to the car and shot Lee twice. Lee died shortly thereafter as a result of the injuries inflicted.
Lee's mother, Marion, filed suit against B & B, its owners and insurer, and Gauthier. The OPSB was added as a defendant in a Supplemental and Amending Petition filed in October 1989, more than two years after the shooting occurred. On November 5, 1990, the trial court dismissed B & B Ventures, its insurer, Kirkland, Garibaldi, and the OPSB. On appeal, this court reversed the OPSB's dismissal, leaving OPSB and Gauthier as the only remaining defendants.
After a bench trial on June 19, 1997, the trial court rendered judgment against OPSB and awarded plaintiff $300,000. The judgment was silent as to the liability of Gauthier. The OPSB appealed, and this court remanded the matter, finding that the judgment was not final because it did not dispose of the claims against Gauthier or apportion fault if the defendants were joint tortfeasors.
On November 12, 1999, the trial court entered a Partial Judgment against Gauthier in the amount of $300,000. The court also signed a Final Judgment against the OPSB and Gauthier "jointly and in solido" in the amount of $300,000. In the judgment, the court stated, "[F]or the reasons assigned the court is of the opinion that fault should not be apportioned between defendant, Stanley Gauthier, and defendant OPSB." However, the court provided no further explanation in its Reasons for Judgment. The OPSB subsequently filed this appeal.

DISCUSSION
In its reasons for judgment, the trial court held, "OPSB owed to Albert Lee the duty of providing a reasonably safe environment, since it was the party that invited him to the dance." The court also found that the "failure to provide security at a critical time of dispersing was a breach of the OPSB's duty to provide a reasonably safe environment. The breach of this duty was a contributing cause in fact of the death of Albert Lee." Appellant argues that the trial court erred in imposing such a duty on the OPSB.
In Posecai v. Wal-Mart Stores, Inc., 99-1222, (La.11/30/99), 752 So.2d 762, the Louisiana Supreme Court addressed a similar issue. In Posecai, the plaintiff filed suit after she was robbed at gunpoint in the store's parking lot. The plaintiff based her claim on defendant's failure to provide security guards in the lot, although a security guard was stationed inside the store to protect the cash office. An expert on crime risk assessment testified that the crime could have been prevented by an exterior security presence. He presented evidence that three predatory offenses had occurred on the premises in the six years before the incident. He concluded that the area around the store was "heavily crime impacted." Id. at 765.
The Court noted that to prevail on its negligence cause of action, the plaintiff must prove that the conduct in question *217 was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached. Whether a duty is owed is a question of law. Id. at 765-766. After studying the various methods by which courts around the country have approached this issue, the Court adopted the balancing test, reasoning:
[A]lthough business owners are not the insurers of their patrons' safety, they do have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable. We emphasize, however, that there is generally no duty to protect others from the criminal activities of third persons. See Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984). This duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry.
* * * *
[W]e adopt the following balancing test to be used in deciding whether a business owes a duty of care to protect its customers from the criminal acts of third parties. The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures ... The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.
The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises.
Id. at 766, 768. Finding that the foreseeability and gravity of harm in defendant's parking lot was slight, the Court held that defendant did not owe a duty to protect plaintiff from the criminal acts of third parties.
The OPSB is not the owner of the premises involved here. However, the Posecai reasoning may be employed to determine whether it owed a duty to its invitees. In the instant case, the plaintiff's expert testified that an adequate uniformed police presence at the end of the dance was critical and could have deterred the shooting. He also opined that a shooting, fight, or other criminal activity was foreseeable at a dance where no uniformed security was provided. However, the record is devoid of any evidence or testimony suggesting prior criminal activity on the premises of the Prime Time Disco.
We conclude that the OPSB did not possess the requisite degree of foreseeability for the imposition of a duty to provide additional security in its parking lot. Nor was the degree of foreseeability sufficient to support a duty to implement any lesser security measures. Thus, the OPSB owed no duty to protect plaintiff from the criminal *218 acts of third parties under the facts and circumstances of this case. Having found that no duty was owed, we do not need to address the other elements of the duty-risk analysis or the other assignments of error asserted by the OPSB.
Accordingly, for the foregoing reasons, the judgment of the trial court is reversed as to the OPSB. We find no error in the judgment as it pertains to Stanley Gauthier; therefore, that portion of the judgment is affirmed.
REVERSED IN PART; AFFIRMED IN PART