THIBODEAUX, Judge.
This case is before us on remand from the Louisiana Supreme Court. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 99-2681 (La.2/4/00); 753 So.2d 842. In our prior opinion, we reversed a judgment of the trial court and awarded $1,236,890.87 in wrongful death and survival damages to the family of Jesse Pinson-neault. We determined after an extensive review that Merchants & Farmers Bank & Trust Company (Merchants Bank) was liable to the family because of its failure to undertake and provide reasonable security measures under a duty-risk analysis. See Pinsonneault v. Merchants & Farmers Bank & Trust Co., 99-12 (La.App. 3 Cir. 7/21/99); 738 So.2d 172. The Supreme Court’s remand instructed us to consider the question of duty in light of Posecai v. *764 Wal-Mart Stores, Inc., 99-1222 (La.11/30/99); 752 So.2d 762 which was not yet decided when we rendered our decision in this case.
We have reconsidered the issue of whether Merchants Bank owed a duty to protect Jesse Pinsonneault from the criminal acts of third parties under the circumstances of this case pursuant to the criteria enunciated in Posecai. We conclude that it did. We, therefore, affirm our previous judgment for the reasons articulated in that opinion and for the following additional reasons.
DUTY
Merchants Bank assumed a duty to provide reasonable and proper security when, because of mandates imposed upon it by various Federal Deposit Insurance Corporation’s regulations, it developed a security plan in April 1992, which was several months prior to the murder of Jesse Pinsonneault on November 3, 1992. The assumption of this duty was thoroughly discussed in our prior opinion, Pinsonneault, 738 So.2d at 184-190, and shall not be repeated here.
Consistent with our instructions from the Louisiana Supreme Court, however, we shall further consider whether the analytical framework adopted in Posecai, 752 So.2d 762, serves to impose a duty to implement security measures by Merchants Bank.
Although business owners generally have no duty to protect others from the criminal acts of third persons, “they do have a duty to protect their patrons from criminal acts when those acts are foreseeable .... This duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry.” Id. at 766. In adopting a “balancing test” to determine the existence of a duty, Posecai instructs that:
The foreseeability of the crime risk on the defendant’s property and the gravity of the risk determine the existence and the extent of the defendant’s duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.
The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business’ premises.
Id. at 768.
3There have been at least two previous armed robberies of the Entrance Road branch of Merchants Bank. One of these predatory offenses involved a shooting and one involved an escape route through the unfenced wooded area, located behind the bank. We are cognizant that these incidents occurred during the day and no patrons were harmed. While these crimes lack the similarity of the murder of Jesse Pinsonneault, they nevertheless are preda *765 tory offenses which convey a risk of harm to both employees and customers of the bank. The object of the risk is immaterial; the risk exists regardless of the victim.
In Posecai, the court noted that, although the plaintiffs expert concluded that the area around the business establishment was “heavily crime impacted,” he had not conducted a comparative statistical analysis to any other area in Kenner or the New Orleans metropolitan area. Id. at 765. In this case, it is clear that the Entrance Road branch of Merchants Bank is located in an area with the second highest crime rate in Vernon Parish.
The court in Posecai also observed that only one mugging had occurred in Sam’s parking lot. The lot provided accessible parking to a “multitude of customers that shop at its store each year” and that “[gjiven the large number of customers that used Sam’s parking lot, the previous robbery of only one customer in all those years indicates a very low crime risk.” Id. at 768-769. This observation is especially poignant when the frequency of these activities in Jefferson Parish, where the Sam’s store was located, which had a population of 448,306 in 1990, is compared to the frequency of criminal activity in Vernon Parish, where Merchants Bank is located, which had a population of 61,961 in 1990, according to United States Census Bureau figures. Consideration of this social factor is further strengthened when the 1 ¿population of the specific rural location of Merchants Bank, Leesville, is compared to the metropolitan location of Sam’s, Kenner. Kenner’s population in 1990 was 72,033 compared to Leesville’s population of 7,638, a ratio of nearly 10:1. Obviously, the volume of business at Sam’s was astronomically larger than that of Merchants Bank. Yet, Merchants Bank experienced a higher number of crimes on its premises than that which occurred at the Sam’s location in Posecai.
The nature of banking business is such that it invites the general public to engage in financial transactions at the establishment. A night depository like the one being used by Jesse Pinsonneault invites and encourages customers to conduct banking transactions at night. The bank had been informed of the hazards posed by the nature of its business through a banking newsletter, the Advisor, which advised of the need to formulate security procedures and to install protective security measures as safeguards against criminal activity. The Advisor even detailed specific examples of night deposit incidents for which safeguards were needed. We adopt by reference the discussion in our original opinion, Pinsonneault, 738 So.2d at 188-190, regarding the admonitions contained within the Advisor publications.
The condition of the Entrance Road branch of Merchants Bank further convinces us of the foreseeability of the harm which befell Jesse Pinsonneault. The lack of an enclosing fence around the bank’s premises facilitated an easy escape for criminals. Indeed, in a prior armed robbery of the bank, the perpetrators escaped through the wooded area behind the bank. The fence on the premises only extended to the edge of the woods. If the fence completely enclosed the property, it would have served as a deterrence to criminal activity. As Christian Boyd, one of the perpetrators, testified, “we wouldn’t have had nowhere to go.”
The thick, hedge-like shrubbery measuring approximately 3 1/2-4 feet tall facilitated an easy hiding place, according to Boyd. If these bushes had not existed, 1 fia robber would have “to run from the woods, and there’s too much chance of getting caught.” Indeed, Boyd’s accomplice, Lawson Strickland, hid in the bushes before *766 the violent attack on the young victim. The poor condition of the lighting away from the night depository also accommodated the gunman’s ability to hide behind the bank, out of the sight of night depositors like Jesse Pinsonneault.
Moreover, surveillance cameras had been installed at other Merchants Bank’s branch night depositories, but not at the Entrance Road branch. This branch was the only branch to have experienced two prior armed robberies and which was located in the second highest crime area of Vernon Parish. Indeed, the presence of surveillance cameras would have deterred Boyd and Strickland because to rob under the watchful lens of a surveillance camera would have “been stupid then” and “I’m pretty sure we wouldn’t have done it,” according to Boyd.
We conclude that Merchants Bank possessed the requisite foreseeability to impose a duty to implement, at the very least, security measures such as installation of improved lighting and functional surveillance cameras, installing fencing which would have enclosed the entire property and shield the property from the adjacent wooded area, and trimming and maintaining the shrubbery at a level which would not facilitate hiding. Consequently, Merchants Bank owed a duty to protect Jesse Pinsonneault from the criminal acts of Lawson Strickland and Christian Boyd under the facts and circumstances of this case. Our previous opinion, Pinsonneault v. Merchants & Farmers Bank & Trust Co., 99-12, (La.App. 3 Cir. 7/21/99); 738 So.2d 172 remains unchanged, except as supplemented herein.
All costs are assessed against Merchants Bank.
AFFIRMED ON REMAND.