940 So.2d 704 (2006)
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, et al., Plaintiffs-Respondents
v.
Vernadette PRATT, d/b/a Dette's Concessions, et al., Defendants-Applicants.
No. 41,387-CW.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2006.
*705 Hayes, Harkey, Smith & Cascio, by Thomas M. Hayes, IV, Monroe, for Defendants-Applicants, Colony Ins. Co., Vernadette Pratt and Dette's Concessions.
Waller & Associates, by Sean M. Casey, for Plaintiffs-Respondents, Travelers Property Casualty Co. of America, Joseph Costanza, Patricia Costanza and Salvadore Miletello, Jr.
Before WILLIAMS, STEWART and LOLLEY, JJ.
STEWART, J.
We granted writs in this matter to review the trial court's denial of a motion *706 for summary judgment by the defendants, Vernadette Pratt, d/b/a Dette's Concessions, and her insurer, Colony Insurance Company. At issue is whether Pratt, as a lessee, can be held liable under a negligence theory to the lessee of an adjacent business and to the lessor for property damages from arson committed by an unknown third person who broke into Pratt's business. Having conducted a de novo review of the record, we find both no dispute of material fact that would preclude summary judgment in favor of the defendants and no duty owed by Pratt to protect against the unforeseeable criminal acts of an unknown third party under the facts of this case.

FACTS
Vernadette Pratt had an oral lease with Joseph and Patricia Costanza for a space in which she operated a restaurant known as Dette's Concessions. Pratt's space shared a common wall with the adjacent business, Sal's Men and Boy's Fashions, which was operated by Salvadore Miletello, Jr. Miletello also leased space from the Costanzas, who owned the building in which the two businesses operated.
On April 20, 2004, an unknown person broke into the rear door of Dette's Concessions and started a fire. The fire caused extensive damage. Both the Costanzas and Miletello were insured by Travelers Property Casualty Company of America under separate policies. Travelers paid its insureds' losses and then filed a subrogation action against Pratt and her insurer. Travelers alleged that the "sole and proximate cause" of the fire was the fault of Pratt for negligently failing to adequately secure the premises.
Pratt and her insurer moved for summary judgment, contending that Pratt owed no duty either to the Costanzas or to Miletello to protect from criminal acts of an unknown third person which were not reasonably anticipated. They asserted that Travelers would not be able to establish that Pratt was at fault in causing the fire by failing to secure the premises or that she had any reason to anticipate that someone would break in the building to commit arson.
Travelers opposed the summary judgment motion, noting that Pratt's restaurant had been burglarized on two prior occasions through the front entrance and that there had been multiple instances of the rear door alarm being triggered. Thus, Travelers asserted that Pratt had notice that her business was subject to crime and should have reasonably anticipated that her business was a potential target for arson. Pointing out that Pratt had taken steps to better secure the front entrance of her building, Travelers argued that she should have also taken steps to better secure the rear entrance. Finally, Travelers asserted a genuine issue of fact existed as to how the rear door actually was secured on the night of the fire.
After hearing arguments, the trial court denied the motion for summary judgment. The trial court determined that issues of fact concerning how the intruder entered the business and how the rear entrance was actually secured the night of the fire precluded summary judgment. Following the adverse judgment, Pratt and her insurer filed a writ application seeking supervisory review of the trial court's ruling. We granted the application.

DISCUSSION
Applicable Law
On appeal, summary judgments are given a de novo review using the same criteria that govern the trial court's consideration of whether summary judgment is *707 appropriate. Taylor v. Rowell, 98-2865 (La.05/18/99), 736 So.2d 812.
Our law provides that the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Racine v. Moon's Towing, 2001-2837 (La.05/14/02), 817 So.2d 21. If the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law, then summary judgment shall be rendered. La. C.C.P. art. 966; Patton v. Strogen, 39,829 (La.App. 2d Cir.8/17/05), 908 So.2d 1282, writ denied, 2005-2397 (La.3/17/06), 925 So.2d 548.
As explained in La. C.C.P. art. 966(C)(2) and throughout our jurisprudence, the burden of proof on a motion for summary judgment remains with the movant. However, when the movant will not bear the burden of proof at trial on the matter before the court on the summary judgment motion, the burden does not require the movant to negate all essential elements of the adverse party's claim, but rather to point out that there is an absence of factual support for one or more elements essential to that claim. La. C.C.P. art. 966(C)(2). If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact. Id.
As provided in La. C.C.P. art. 967(B), the adverse party may not rest on the mere allegations or denials of his pleading in response to a properly made and supported motion for summary judgment; rather, his response, by affidavits or otherwise, must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment shall be rendered against him, if appropriate. La. C.C.P. art. 967(B).
A material fact is one whose existence or nonexistence may be essential to the plaintiff's action under the applicable theory of recovery. Such facts potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.07/05/94), 639 So.2d 730; Patton, supra. Not all disputed facts are material, and summary judgment may be granted if contested facts present no legal issues. Harvey v. Francis, XXXX-XXXX (La.App. 4th Cir. 3/21/01), 785 So.2d 893. Whether a disputed fact is material is determined in light of the substantive law applicable to the case. Id. Genuine issues are triable issues for the fact that reasonable persons could disagree as to the conclusion. Patton, supra.
In a negligence action, we use the duty-risk analysis to determine liability. This analysis requires the plaintiff to prove that the defendant's conduct was the cause-in-fact of the resulting harm, that the defendant owed a duty of care to the plaintiff, that the defendant breached the duty, and that the risk of harm was within the scope of protection afforded by the duty breached. Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762.
The threshold issue in any negligence action is whether the defendant owed a duty to the plaintiff. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 2001-2217 (La.04/03/02), 816 So.2d 270; Posecai, supra; Patton, supra. Whether a duty is owed is a question of law. Posecai, supra. The legal inquiry *708 involves a determination of whether the duty of the particular defendant that has allegedly been breached extends to protect against the risk of the harm suffered by the plaintiff, and whether there are legal or policy reasons which may excuse the defendant from the consequences of his negligence. Peacock's Inc. v. Shreveport Alarm Co., 510 So.2d 387 (La.App. 2d Cir. 1987), writs denied, 513 So.2d 826, 513 So.2d 827, and 513 So.2d 828 (La.1987). A risk may not be within the scope of a duty where the circumstances of the particular injury to the plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty. Todd v. State Through Social Services, 96-3090 (La.9/9/97), 699 So.2d 35, reh. denied, 96-3090 (La.10/31/97), 701 So.2d 958; Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). The extent of protection owed by a defendant to a plaintiff is made on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms. Todd, supra.
With regard to the potential liability of a lessee, the articles in effect at the time of the fire included former La. Civ. C. arts. 2721 and 2723. Article 2721 provided that the lessee is only liable for those damages sustained through his own fault. With regard to destruction caused by a fire, Article 2723 specified that a lessee could only be liable for such destruction upon proof that the fire happened by either his own fault or neglect, or by that of his family. The articles on lease were revised by Acts 2004, No. 821, and became effective on January 1, 2005. The pertinent revised article is La. Civ. C. art. 2687, which states, "The lessee is liable for damage to the thing caused by his fault or that of a person who, with his consent, is on the premises or uses the thing." We discern no substantive change in the pertinent provisions as they apply in this matter. All three articles provide for liability of the lessee for damages caused by his own fault. As is made clear by the 2004 Revision Comment (b), the lessee is not responsible for damage caused by persons who use the leased premises without his consent, such as a passerby or a trespasser. Moreover, there is generally no duty to protect others from the criminal activities of third persons. Posecai, supra; Patton, supra.
In Harvey, supra, the fourth circuit held as a matter of law that, in the absence of actual knowledge, neither a landlord nor tenant has a duty to protect an adjoining property owner from a fire caused by an unrelated third person. In that case, the plaintiff sued the owner and lessee of the building next to hers where a fire had begun and then spread to her building causing damage. There was no dispute as to the fact that the fire was started by an unknown third person. Although the court found a genuine issue of fact concerning terms of the lease and prior notice of the condition of the property, the court found that the issue was not one of material fact for the reasons that the fire was started by an unknown third person, and the court found nothing in the law imposing liability for such damages on either the landlord or tenant.
Analysis
The parties agree that an unknown third person broke into Dette's Concessions and committed arson, which damaged the Costanzas' building and Miletello's business. Both parties rely on Pratt's deposition in supporting and opposing summary judgment.
Pratt testified that she opened Dette's Concessions in May or June of 2003. She had an oral lease agreement with the Costanzas. A wall separated her business from Miletello's business in the same *709 building, and there was an interior doorway between the two businesses that was controlled by Miletello. The front entrance of Pratt's business was a glass door for which she had a key for the lock. The business also had a back door opening to the alley, but Pratt could not enter her business from the back door. She used it only when taking trash to the dumpster. The back door was secured from the inside by a push button lock on the doorknob, for which there was no key, and by a board placed across the interior doorway and fitted into brackets on the sides. The rear door also had two unusable, broken bolt locks.
Shortly after starting her business, Pratt had a burglar alarm system installed. The alarm system consisted of motion detectors and sensors on the front and back doors. Almost immediately, Pratt began having problems with the sensor on the back door triggering the alarm. Pratt explained that even with the door locked and the board placed across it, the door did not fit snugly in the frame. There was enough room to allow the door to jiggle or somehow lose the connection between the sensors. To remedy the problem and avoid paying further false alarm fines to the police, she changed the placement of the board. Instead of placing it in the brackets, she placed one end of the board under the doorknob and the other end on the floor at an angle with a block of wood against it. This apparently solved the problem with the rear alarm sensor.
Pratt also testified about three instances of burglaries or attempted burglaries that occurred over a few weeks during the winter. A former employee who had been fired and had made threats against Pratt was arrested for these crimes. He had threatened to have her business shut down and to report her to the board of health. He had also warned that she should watch out when alone at the business. Because in each instance the intruder entered or attempted to enter through the front glass door, Pratt had a metal gate installed over the front as an additional security measure.
Pratt testified that she did not work the day of the fire but that she was at the restaurant a little before closing time. She went to get the money, and she left at the same time as her employees. However, she did not check the back door before leaving. She explained that her employees' duties included locking the back door if it had been opened that day to take out the trash. The rear door was locked by pushing the button on the doorknob and securing the board under the knob. Pratt felt that her business was secure and often left money there over the weekends. Despite the prior break-ins, she did not believe that anyone would set fire to her business.
Although Pratt did not personally lock the back door on the night of the fire, her deposition establishes the customary manner in which the back door was secured each night. Pratt correctly argues that her deposition testimony regarding the customary manner of locking the back door was sufficient to shift the burden to Travelers to come forth with evidence to show that the door was not adequately secured the night of the fire. Travelers, not Pratt, bears the burden of proof as to whether the door was inadequately secured the night of the fire. Travelers' reliance on Pratt's deposition and the fact that she did not personally lock the back door the night of the fire does not create a genuine issue of material fact for trial in the absence of other evidence, such as an affidavit, suggesting that the door was not locked or that the method of securing the door was inadequate. Thus, we find no *710 dispute of fact that would preclude summary judgment.
To establish liability, Travelers must prove that Pratt had a duty to protect the Costanzas and Miletello from the criminal acts of the unknown person who entered her business. Travelers must also be able to prove that the risk of arson was within the scope of protection afforded by that duty. Because there was no written lease, Pratt's liability as a lessee is set forth in the Civil Code articles previously quoted. She may be held liable for those damages occasioned by her own fault. But the articles do not impose liability on the lessee for damages caused by intruders, trespassers, or the mere passerby. The Civil Code provisions support Pratt's motion for summary judgment.
Travelers seeks to defeat summary judgment by asserting that the history of criminal activity directed at Pratt's business, the threats by her former employee, the additional security measures taken by Pratt to protect the front entrance, and the alarms that had been triggered at the back door put Pratt on notice that her business was a target for crime and created a duty requiring her to take additional security measures at the back entrance to protect her lessor and neighbor from the possibility of damage from arson. Travelers cites Peacock's, supra, in support of this duty.
In Peacock's, a jewelry store located in a shopping center sued its lessor after a burglary. The burglars entered the shopping center through a utility room door that the lessor failed to keep locked over many months. Locks placed on the door had been continuously broken, so the manager of the shopping center had abandoned efforts to keep the door locked. In imposing liability on the shopping center owner / lessor, this court found that the risk of burglary of a jewelry store was imminently foreseeable. The court further found there to be an ease of association between the owners' duty to reasonably secure the utility room and the risk that a burglar would use the room to facilitate his crime. We held that the owner of the shopping center had a duty to "undertake reasonable efforts" to shut and lock the utility room door. However, we also recognized that no locked door is burglar proof.
We find no support in Peacock's for Travelers' assertion of a duty on the part of Pratt vis-a-vis the Costanzas or Miletello. First, Peacock's does not address the duty of a lessee. Second, Travelers put forth no evidence suggesting that Pratt maintained an unlocked back door over a period of time. Third, Peacock's requires only that one make reasonable efforts to maintain a locked door. Pratt's deposition established the customary manner in which she secured the back door of her business. In response, there was simply nothing offered by Travelers in opposition to summary judgment to suggest that Pratt did not make reasonable efforts to maintain a locked back door or that the customary manner of securing the back door was inadequate. Fourth, although the burglary of a jewelry store was determined to be imminently foreseeable, the same cannot be said for the crime of arson committed by the intruder in Dette's Concessions. Even considering the prior burglaries and threats by Pratt's former employee, the possibility that an intruder might enter the business and start a fire is not a foreseeable event that a reasonable person would take additional security measures to protect against.
While the gravity of harm from arson is great, the risk of arson is simply not foreseeable under the facts presented on summary judgment. None of the prior crimes involved arson; instead, they were minor *711 break-ins involving theft of only cigarettes and chips. The prior break-ins occurred within a short time span, and the perpetrator was arrested. The perpetrator, who was Pratt's former employee, had not threatened to set fire to her business. The back door of Dette's Concessions was customarily kept locked. As observed in Peacock's, supra, no locked door is burglar proof. An intruder intent on committing a crime will not necessarily be deterred by a locked door. Requiring more than the customary security measures taken by Pratt to engage the pushbutton lock, place the board under the doorknob, and arm the burglar alarm would impose an unreasonable and impossible duty to protect against all crimes that might occur, whether foreseeable or not. Finally, arson is not the type of crime that necessarily requires entrance into the building; thus merely securing entry to a building may not suffice to prevent a perpetrator intent on committing arson.
The exhibits in support of and in opposition to summary judgment establish that Pratt took reasonable measures to keep her business secured and protected against criminal intruders. The exhibits further establish that Pratt had no reason to believe that her business was a target for arson. The prior occurrence of minor criminal activity by a former employee did not give rise to a duty requiring Pratt to protect against any and every type of criminal activity that might occur nor did it make the occurrence of arson a foreseeable possibility for which a duty of protection might be imposed.
Finding no disputed genuine issue of material fact for trial and concluding that Travelers will be unable to prove either the existence of a duty under the duty-risk analysis or that arson is a foreseeable risk included in Pratt's duty as a lessee, we grant summary judgment in favor of Pratt.

CONCLUSION
For the reasons explained, we find in favor of the defendants, Vernadette Pratt and Colony Insurance Company, on their motion for summary judgment. We hereby vacate the trial court's ruling, grant the defendant's motion for summary judgment, and dismiss the plaintiffs' claims. Costs are assessed against the plaintiffs.
WRIT GRANTED, JUDGMENT VACATED, AND SUMMARY JUDGMENT GRANTED.