SAUNDERS, Judge,
concurring in the result.
| initially, I would like to note that our Supreme Court’s analysis in its prior disposition of this case was based upon affidavits that made it appear that the School Board provided C.C. the opportunity of using the late bus. After this point was hashed out at trial, it is clear that this was not the case. It is my opinion that La.R.S. 17:158(A)(1) imposes a duty on the School Board in favor of C.C.
Louisiana Revised Statutes 17:158(A)(1) provides:
Except as provided by Subsection H of this Section and in accordance with the requirements of Subsection F of this Section, each parish and city school board shall provide free transportation for any student attending a school of suitable grade approved by the State Board of Elementary and Secondary Education within the jurisdictional boundaries of the parish or school board if the student resides more than one mile from such school.
There is no dispute that C.C. lived more than one mile from school or that the behavior clinic was a school activity. There is also no dispute that the trial court reached a factual conclusion that C.C. understood that she could not ride the late bus. The trial court found that “there is no evidence that this particular student knew she could ride the [late] bus.” This factual finding is sufficiently supported by the record as there is an abundance of testimony to make this finding reasonable, inclusive of not only the testimony of C.C., but of her mother, that |?they both understood that the late bus could not be ridden by students required to attend the behavior clinic. As such, I think that the School Board breached its duty to provide C.C. with transportation under La.R.S. 17:158(A)(1).
The next issue is the question of foreseeability. This question requires that we determine the duty, if any, that the School Board has to its students to protect them from the criminal activity of third parties. Here, I think it important to note Justice Weimer’s concurrence, joined by Justices Kimball and Traylor in our Supreme Court’s earlier analysis of this case. I find it telling when he discusses the factual issue of whether C.C. was allowed to use the telephone where the following is stated: “Allowing telephone access imposes virtually no burden on the school board and costs the school board nothing, yet protects the child from the potential of being exposed to a risk of harm.”
This language is similar to what was used by our Supreme Court in formulating its balancing test in Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762. I read this language to say that the School Board has the same duty, or at least a similar duty, toward its students as that of business owners to protect its patrons from crimes committed by third parties. In Posecai, our Supreme Court provided the following balancing test:
With the foregoing considerations in mind, we adopt the following balancing test to be used in deciding whether a business owes a duty of care to protect its customers from the criminal acts of third parties. The foreseeability of the crime risk on the defendant’s property and the gravity of the risk determine the existence and the extent of the defendant’s duty. The greater the foreseeability and gravity of the harm, the greater *625 the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the | :iburden of establishing the duty the defendant owed under the circumstances.
Posecai, 752 So.2d at 768 (emphasis added).
It is hard to envision that the School Board would have a lesser burden than that of business owners under the Posecai test since students, unlike patrons, are mandated to attend school. With this test in mind and applying it to the facts of this case, I note that, while the foreseeability in this case is not great, the gravity of the possible harm is indeed great. Further, as was the case with the telephone call discussed by Justice Weimer, providing that a child in the behavior clinic can ride the late bus costs the School Board virtually nothing, as the bus was already at the school and provided other students with transportation on that particular evening. Thus, given the high gravity of this particular harm and the low burden and statutory mandate on the School Board, I find that the school board’s duty to provide transportation encompasses the risk of C.C. being raped while walking home.
As a result, I feel that the trial court erred when it concluded that “the plaintiff has failed to carry her burden that the [Lafayette Parish School Board] was negligent at all.” The School Board’s breach of its statutorily imposed duty to C.C. was not only a cause-in-fact of C.C.’s harm, it was also foreseeable that this breach could result in some harm. Given the minimal inconvenience to the School Board, i.e. that it not violate its statutory duty of providing transportation and the balancing test of Posecai, I also conclude that the harm was foreseeable.
With respect to whether C.C. was allowed to use the telephone in the principal’s office or the personal phone of the teacher, I feel that the record suggests she could have used a phone to call her mother for a ride. Nevertheless, I |/eel that this specific issue deals only with the allocation of fault between the School Board and C.C. for the resulting harm.
In this regard, I would again like to note Justice Weimer’s concurrence where it states, “[m]atters such as dangerous traffic conditions or neighborhoods may make that choice by the child [to walk home] imprudent. A school board employee exercising reasonable supervision would not require a child to make such a choice.” S.J. v. Lafayette Parish School Bd., 06-2862, p. 3 (La.6/29/07), 959 So.2d 884, 890. C.C. should be allocated a percentage of fault. It should be a small percentage. I agree with the allocation to C.C. of five percent fault. I also agree that the perpetrator of the crime be assessed with seventy-five percent of the fault, with the remaining twenty percent allocated to the School Board.
Finally, I feel that an award of one hundred thousand dollars is appropriate for the general damages suffered by C.C. in this case with reductions for the allocations of fault to the respective parties. Further, with respect to S.J., I feel that an award of twenty thousand dollars is warranted.