# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-727

**SHELBY SCHWEITZER**

**VERSUS**

**WAL-MART STORES, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT,
PARISH OF VERNON, NO. 60,799,
HONORABLE JOHN C. FORD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## MICHAEL G. SULLIVAN
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ned E. Doucet, Jr., Chief Judge, Sylvia R. Cooks, and Michael G. Sullivan, Judges.

**REVERSED.**

**Elvin C. Fontenot, Jr.**
**Attorney at Law**
**110 East Texas Street**
**Leesville, Louisiana 71446**
**(337) 239-2684**
**Counsel for Plaintiff/Appellee/Appellant:**
 **Shelby Schweitzer**

**Leslie R. Leavoy, Jr.**
**Attorney at Law**
**Post Office Box 1055**
**DeRidder, Louisiana 70634**
**(377) 462-6051**
**Counsel for Plaintiff/Appellee/Appellant:**
 **Shelby Schweitzer**

**Philip A. Fontenot**
**Davidson, Meaux, Sonnier & McElligott**
**Post Office Drawer 2908**
**Lafayette, Louisiana   70502-2908**
**(337) 237-1660**
**Counsel for Defendant/Appellant:**
       **Wal-Mart Stores, Inc.**

SULLIVAN, Judge.

Wal-Mart Stores, Inc. appeals a $100,000.00 judgment in favor of Shelby Schweitzer for injuries she sustained when two individuals attempted to abduct her from the parking lot of its Leesville store. Ms. Schweitzer seeks an increase in damages. For the following reasons, we reverse the judgment of the trial court.

### Facts

In January 1997, Wal-Mart began operating its Leesville store twenty-four hours a day. Ralph Clouse, the store manager, was informed of the conversion to a twenty-four hour store in late 1996. In preparation for the conversion, Mr. Clouse met with his district manager and Wal-Mart's district risk management advisor to consider and plan for any additional concerns that would arise with the conversion. Thereafter, he met with Leesville Police Chief, Bobby Hickman, to request increased police patrols at night. Chief Hickman assured Mr. Clouse that he could provide patrols every thirty minutes or less. In connection with the police patrols, Mr. Clouse arranged for the police officers to park their units at the front of the store and to have coffee, doughnuts, and other refreshments available for them just inside the front of the store to encourage the officers to get out of their units and enter the store. Mr. Clouse also hired an employee to greet customers as they entered and exited the store, had the parking lot light fixtures checked to insure that all were working and had proper bulbs, had the buggy boys wear bright orange vests while retrieving buggies in the parking lot, installed a twenty-four hour surveillance camera over the only entrance/exit door that remained open all night, locked all entrance/exit doors except the one at the front of the store, locked all shipping and receiving doors, and instructed its employees to park away from the front of the store to allow its customers to park as close as possible to the store. All employees, including the "greeter," buggy boys, lawn and garden employees, employees arriving or leaving the store for their

shift or lunch, were instructed to report anything unusual or suspicious they saw outside the building.

In the late evening of June 4, 1997, two young men, Jay Longsworth, twenty years old, and Ronald Ross, sixteen years old, went to the Leesville Wal-Mart to "hang-out" for a while. While walking around inside the store, they decided to take a nice car and go joyriding. They exited the store and sat on lawn furniture that was situated on the sidewalk at the front of the store and looked for a car to take joyriding. Longsworth was on probation at the time, having been convicted of burglary and theft as an adult.

At approximately 11:10 p.m., Ms. Schweitzer went to the Leesville Wal-Mart to do some shopping on her way home from work. The young men watched Ms. Schweitzer approach Wal-Mart in her Lincoln Continental and decided they would take her car for their joyride. Ms. Schweitzer entered the parking lot and parked her car under a light as close to the store entrance as possible. As she exited her car, the young men accosted her and forced her into the backseat of her car. Ross pulled out a gun he had concealed under his shirt in the waistband of his pants, and they threatened her with death if she did not cooperate. Longsworth got into the driver's seat; Ross got in the rear seat with Ms. Schweitzer. As Longsworth drove toward the parking lot exit, a Leesville City Police car entered the parking lot on a scheduled patrol. Trying not to attract the police officer's attention, Longsworth slowed the car, giving Ms. Schweitzer the opportunity to jump from the car to safety.

Ms. Schweitzer sued Wal-Mart and Longsworth for damages. She alleged that Wal-Mart failed to provide security for its patrons, failed to properly light the parking lot, failed to provide security guards, failed to take precautionary measures to prevent

loitering in the parking lot, and other acts of negligence to be shown at trial. She dismissed her claims against Longsworth the day of trial.

On January 28 and 29, 2002, the matter was tried before a jury, which assessed 16.5% fault to Wal-Mart, 41.75% fault to Longsworth, and 41.75% fault to Ross and awarded Ms. Schweitzer $100,000.00 in general damages. After the trial, the trial court considered whether Ms. Schweitzer's recovery should be reduced to the percentage of Wal-Mart's negligence since her damages were caused by the intentional actions of Longsworth and Ross. Finding Wal-Mart had the incentive and the means to protect its patrons against the actions of would-be intentional tortfeasors, the trial court assessed Wal-Mart with 100% of Ms. Schweitzer's damages. Thereafter, Ms. Schweitzer filed a motion for judgment notwithstanding the verdict, or alternatively, for a new trial, asserting that Wal-Mart should be assessed with 50% fault and that she should be awarded past medical expenses in the amount $4,229.35. The trial court granted the JNOV, awarded Ms. Schweitzer additional damages in the amount of $4,229.35, representing past medical expenses, and reassessed fault, assigning 50% fault to Wal-Mart and 50% jointly to Longsworth and Ross.

Wal-Mart appeals, assigning eight errors with the jury's assessment of fault and award of damages and with the trial court's reassessment of fault and award of additional damages. Ms. Schweitzer seeks an increase in damages. Finding merit with Wal-Mart's third assignment of error, we reverse the judgment of the trial court.

### *Discussion*

To prevail on her claim against Wal-Mart, Ms. Schweitzer must prove by a preponderance of the evidence: (1) Wal-Mart had a duty to conform its conduct to a specific standard (duty); (2) it failed to conform to do so (breach of duty); (3) its conduct was the cause-in-fact of her injuries (cause-in-fact); (4) its conduct was a

3

legal cause of her injuries (the risk and harm caused to plaintiff was within the scope of the protection afforded by the duty); and (5) she incurred actual damages. *Theriot v. Lasseigne*, 93-2661 (La. 7/5/94), 640 So.2d 1305; *Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289 (La.1993); *Roberts v. Benoit*, 605 So.2d 1032 (La.1991); *Fowler v. Roberts*, 556 So.2d 1 (La.1989). A negative answer to any of the above inquiries results in the determination of no liability. *Mathieu v. Imperial Toy Corp.*, 94-952 (La. 11/30/94), 646 So.2d 318.

Whether a business owner has a duty to protect its patrons from crimes perpetrated on its premises by third parties was considered by the supreme court in *Posecai v. Wal-Mart Stores, Inc.*, 99-1222 (La. 11/30/99), 752 So.2d 762. Noting that such a duty only arises under limited circumstances, the court determined that the foreseeability of such a crime is a critical inquiry. *Id.* The court adopted the following balancing test as the criteria for determining liability in such a case:

> The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.
>
> The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises.

*Id.* at 768.

4

In *Posecai*, three predatory offenses had occurred on the defendant's premises in the six and one-half years prior to the attack on the plaintiff; only one of those had been perpetrated on one of the defendant's customers. Making the following observations, the court found no duty to provide security patrols in the defendant's parking lot:

> A careful consideration of the previous incidents of predatory offenses on the property reveals that there was only one other crime in Sam's parking lot, the mugging in 1992, that was perpetrated against a Sam's customer and that bears any similarity to the crime that occurred in this case. Given the large number of customers that used Sam's parking lot, the previous robbery of only one customer in all those years indicates a very low crime risk. It is also relevant that Sam's only operates during daylight hours and must provide an accessible parking lot to the multitude of customers that shop at its store each year. Although the neighborhood bordering Sam's is considered a high crime area by local law enforcement, the foreseeability and gravity of harm in Sam's parking lot remained slight.

*Id.* at 768-69.

While Ms. Schweitzer asserts that Wal-Mart had a duty to protect her from the criminal actions of Longsworth and Ross, she does not claim on appeal it had a duty to provide heightened security in the form of security guards at its Leesville store as the plaintiffs in *Posceai* claimed. Rather, she claims that Wal-Mart's employees had a duty to question these young men regarding their presence on its premises and whether they needed assistance and that their failure to do so was a breach of that duty. Wal-Mart contends it did not owe a duty to Ms. Schweitzer with regard to the actions of Longsworth and Ross or, alternatively, if it owed her a duty, it did not breach that duty.

A business owner's duty to take security precautions to protect its patrons in a nighttime situation was addressed in *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La. 4/3/02), 816 So.2d 270. In *Pinsonneault*, a young man was robbed and killed while making a night deposit at the bank. The supreme court held

5

that because the bank's night deposit customers "faced a very low crime risk," the bank "did not possess the requisite foreseeability for the imposition of a duty to employ heightened security measures for the protection of patrons of its night depository." *Id.* at 277.

The court continued:

> This finding does not end our inquiry with respect to the bank's duty, however. As we cautioned in *Posecai*, while the existence, frequency, and similarity of prior incidents of crime on the premises is an important consideration in the duty determination, other factors, such as the location, nature, and condition of the property should also be taken into account. *Posecai* in no way implies, nor should it be interpreted to imply, that a business' duty to protect customers from the criminal attacks of third persons does not arise until a customer is actually assaulted on the premises. To the contrary, *Posecai* recognizes, and we reiterate, that while businesses are generally not responsible for the crime that haunts our communities, "business owners are in the best position to appreciate the crime risks that are posed on their premises and to take reasonable precautions to counteract those risks." *Posecai*, 99-1222 at 8, 752 So.2d at 768.

*Id.* at 277-78.

No crime had ever been committed in the Leesville Wal-Mart parking lot, and Chief Hickman testified that the store is in an area of very low crime. Accordingly, we find Wal-Mart did not have a duty to employ heightened security measures for its patrons. However, memoranda prepared by Dave Gorman, Wal-Mart's corporate risk management officer, documented that the risk of crime increases after dark, and Chief Hickman acknowledged that this is a well-known fact. Indeed, Wal-Mart itself recognized that by converting its Leesville store to a twenty-four hour store the likelihood of crime increased and had Mr. Clouse take steps to provide additional security for that reason. Therefore, we find Wal-Mart had a duty to implement reasonable security measures to provide protection to its patrons who shop at night at its Leesville store. *Pinsonneault*, 816 So.2d 270.

6

We now consider whether the steps taken by Wal-Mart were reasonable. Ms. Schweitzer argues Wal-Mart's security measures were not sufficient, asserting the young men were on Wal-Mart's premises for an extended period of time and should have been approached and questioned by a Wal-Mart employee. She also insinuates that the failure of a Wal-Mart employee to notice that Ross had a gun in his possession was a breach of its duty to her. Wal-Mart claims that its security measures were sufficient, pointing out that its security measures allowed Ms. Schweitzer to escape from her abductors.

Longsworth testified that he lived near the Leesville Wal-Mart, that he had been to the store 200 to 300 times before June 4, 1997, and that he had never been in trouble at the store. According to him, he and Ross went to Wal-Mart that evening to "hang out" like typical teenagers. His testimony was not clear as to how long he and Ross were at Wal-Mart before they accosted Ms. Schweitzer. When examined by Ms. Schweitzer's attorney, his testimony indicated that they were at the store for a total of approximately one and one-half hours before they accosted Ms. Schweitzer. Yet, when examined by counsel for Wal-Mart, he testified that they had been at the store for twenty to thirty minutes when they decided to take a nice car and go joyriding and that they were outside the store for only five to seven minutes before they spotted Ms. Schweitzer's car and decided to take it for their joyride. Regardless of how long Longsworth and Ross were at Wal-Mart, there is no evidence that their behavior was improper or suspicious or would have indicated to Wal-Mart's employees that they posed any danger to its patrons.

With regard to Ross' possession of a gun, Longsworth testified that Ross had a gun with him when they went to Wal-Mart and that they had been places together before with one of them carrying a gun and gone unnoticed. He explained that the gun

7

was a small caliber gun that was easily hidden in Ross's waistband under his shirt. Again, there is nothing to indicate that a Wal-Mart employee could have known, or even suspected, that Ross had a gun.

Longsworth testified they were not concerned that Ms. Schweitzer parked close to the front of the store, that other customers were within ten to fifteen feet of them when they accosted her, or that there were Wal-Mart employees going in and out of the garden department and the parking lot. While he testified that the arrival of the police car concerned him, he also testified that he knew the police patrolled the store and that there were security guards at the store at times. Overall, his testimony indicated that nothing but a police officer would have deterred him and Ross from doing what they set out to do.

Whether a defendant has breached a duty is a question of fact. *Pinsonneault*, 816 So.2d 270. Findings of fact by the trial court cannot be set aside in the absence of manifest error or unless the findings are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). To reverse a trial court's determination of fact, we must review the record in its entirety and find that it does not establish a reasonable factual basis for the finding of fact and that the fact finder is clearly wrong or manifestly erroneous. *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). We must give great weight to the factual conclusions of the trier of fact and cannot re-weigh the evidence and substitute our own factual conclusions. *Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 93-3099, 93-3110, 93-3112 (La. 7/5/94), 639 So.2d 216.

We have reviewed the record and find that it does not establish a reasonable basis for the jury's conclusion that Wal-Mart's security measures were not reasonable. As argued by Ms. Schweitzer, the only basis for the jury's conclusion is that Longsworth and Ross were on Wal-Mart's premises for an hour or so and were not

8

questioned by an employee regarding their presence. As Longsworth testified, he and Ross were hanging out like typical teenagers, and there is no evidence that either of them did anything wrong before they accosted Ms. Schweitzer. Longsworth had been to the store 200 to 300 times before and had never been in trouble. There is simply nothing in the record which indicates that their presence gave Wal-Mart's employees any reason to question them.

The judgment of the trial court is reversed. All costs of this appeal are assessed to Shelby Schweitzer.

**REVERSED.**

9