# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30282
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

September 28, 2017

Lyle W. Cayce
Clerk

SUSAN SIMPSON; JERRY SIMPSON,

Plaintiffs - Appellants

v.

DOLLAR TREE STORES, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:15-CV-2107

Before HIGGINBOTHAM, JONES, and SMITH, Circuit Judges.

PER CURIAM:*

The Simpsons sued Dollar Tree for negligence, alleging that Dollar Tree was liable for injuries Susan Simpson received when she was robbed in the Dollar Tree store's parking lot in Monroe, Louisiana. The district court determined that the Simpsons had failed to show a genuine issue of material fact that Dollar Tree owed a duty to protect Susan Simpson from the criminal act of a third party and granted summary judgment against the Simpsons. The

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30282

Simpsons timely appealed.  Because we determine that the Simpsons have raised a genuine issue of material fact regarding whether or not Dollar Tree owed a duty to protect Susan Simpson from the criminal act of a third party, we VACATE the district court's judgment and REMAND for further proceedings.

We review grants of summary judgment *de novo*.  *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). We review "the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment." *Moody*, 868 F.3d at 352 (quotation omitted).

Whether or not a business owner has a duty to protect its patrons from third party criminal acts is determined by state law.  The highest court of Louisiana has adopted a balancing test to determine when such a duty exists. The court described the test as follows:

> The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty.  The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business.  A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery.  The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.
>
> The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case.  The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises, but the location, nature and condition of the property should also be taken into account.  It is

2

> highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises.

*Posecai v. Wal-Mart Stores, Inc.*, 752 So.2d 762, 768 (La. 1999). Though the existence of prior incidents is the most important factor, other factors should also be taken into account. In *Posecai*, the Supreme Court reversed a plaintiff's judgment after noting, *inter alia*, police testimony that they had rarely been called out to the Sam's Club and that only one arguably similar assault had occurred in over six years. In a subsequent decision, the Louisiana Supreme Court explained:

> As we cautioned in *Posecai,* while the existence, frequency, and similarity of prior incidents of crime on the premises is an important consideration in the duty determination, other factors, such as the location, nature, and condition of the property should also be taken into account. *Posecai* in no way implies, nor should it be interpreted to imply, that a business' duty to protect customers from the criminal attacks of third persons does not arise until a customer is actually assaulted on the premises. To the contrary, *Posecai* recognizes, and we reiterate, that while businesses are generally not responsible for the crime that haunts our communities, "*business owners are in the best position to appreciate the crime risks that are posed on their premises and to take reasonable precautions to counteract those risks.*"

*Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 816 So.2d 270, 277-78 (La. 2002) (emphasis added). Therefore, the absence of prior similar incidents does not guarantee that the business owed no duty to protect its customers against third party criminal acts.

In *Pinsonneault,* a bank customer had been murdered at the bank's night deposit box and the customer's parents sued the bank for wrongful death. *Id.* at 273. The court determined that the bank did not have "a duty to employ heightened security measures for the protection of patrons of its night

No. 17-30282

depository" because there had been no similar prior incidents, the bank was in a comparatively low crime area for its district, and there was a low statistical likelihood that night deposit crimes would occur. *Id.* at 276-77. However, the court still determined that the bank "had a duty to implement reasonable security measures" because the bank's written security plan "clearly envision[ed] the recognition of a duty by [the bank] to implement reasonable security measures for the protection of its customers." *Id.* at 278. The steps the bank had taken to implement this plan, "providing lighting at its night time depository, erecting fencing along vulnerable perimeters, and setting up a schedule for the installation of modern surveillance cameras at each of its branches" also supported the court's conclusion. *Id.*

In *Schweitzer*, a Wal-Mart customer alleged she was injured during an abduction attempt on Wal-Mart's parking lot at night. *Schweitzer v. Wal-Mart Stores, Inc.*, 861 So.2d 747 (La. Ct. App 2003). This Wal-Mart had begun to operate twenty-four hours a day a few months before the customer was attacked. *Id.* As in *Pinsonneault*, the court determined that the store "did not have a duty to employ heightened security measures for its patrons" because it was in a low crime area and there had never before been a crime committed on the parking lot. *Id.* at 751. However, Wal-Mart's steps to increase security as it transitioned to a twenty-four hour schedule, such as requesting police patrols at night and hiring greeters, showed that Wal-Mart itself recognized the increased risk of crime while operating after dark. *Id.* at 748-49. In addition, Wal-Mart's corporate risk management officer wrote a memo on the increased risk of crime after dark. *Id.* at 751. Therefore the court found that "Wal-Mart had a duty to implement reasonable security measures to provide protection to its patrons who shop at night" at that location. *Id.* at 752.

In this case, the Simpsons have alleged facts which, if proved, might show that the Dollar Tree store was aware of a foreseeable risk of violent crime

to its customers.  These facts include:  (1) the store's practice of escorting or watching female employees to their cars at night, (2)  the store's practice of either escorting customers to their car or providing an escort even if unasked, (3) the assistant manager's requests to install security cameras, (4) whether or not the store ever employed security personnel and (5) a prior armed robbery.

We express no opinion on the ultimate outcome of this case, but for these reasons, we **VACATE** the district court's judgment and **REMAND** this case to the District Court for the Western District of Louisiana.