701 So.2d 958 (1997)
TODD
v.
STATE of Louisiana THROUGH THE DEPARTMENT OF SOCIAL SERVICES, OFFICE OF COMMUNITY SERVICES, Cody Labauve, and XYZ Insurance Company.
No. 96-C-3090.
Supreme Court of Louisiana.
October 31, 1997.
CALOGERO, Chief Justice, dissenting from denial of rehearing.
I dissented in this case and would now grant a rehearing for the following reasons. The majority opinion holds that plaintiff, Sheila Todd, failed to establish the requirement of legal causation between LaBauve's actions and Joshua's suicide. After a review of the record, I believe, for the reasons set forth by the trial court and court of appeal, that the plaintiff sustained her burden in showing both cause-in-fact and legal causation.
I also believe that LaBauve and OCS breached the duty owed to this plaintiff. LaBauve and OCS had a duty to protect the plaintiff from this harm. The primary goal of OCS and its caseworkers is to protect the child and make sure that the child is in a safe environment. The well being of the child is of great importance and the well being at issue encompasses both physical and mental well being of the child. This duty owed was breached because LaBauve did not act promptly and thoroughly in the investigation of this case; LaBauve did not act expeditiously as required by the OCS regulations.
Whether there was a breach of a duty owed is a factual determination, and because this is a factual determination, the court of appeal correctly stated that in this instance the appellate court is bound by the "manifest error" standard of review. Todd v. State, 96-535 (La.App. 5th Cir. 11/26/96), 685 So.2d 313, 318. Under that standard, the court of appeal should not upset the factual findings of a trial court absent manifest error or unless clearly wrong. Id. Also, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
In conducting this unsatisfactory investigation, LaBauve discovered three important facts about Joshua: (1) Joshua was admitted to the Coliseum House three years ago; (2) Joshua exhibited unprovoked temper tantrums, was physically and verbally aggressive towards teachers, students and other authority figures, and had a tendency to exaggerate; and (3) Joshua was recently taking Prozac.
The majority opinion states that neither LaBauve nor her supervisor, Yvonne Davis, were overly concerned with the fact that Joshua was prescribed Prozac and was previously committed to Coliseum House. This is not necessarily true. Yvonne Davis testified at trial that she would have expected LaBauve to investigate the fact that an eleven year old had been prescribed an antidepressant, Prozac, and had previously been admitted to mental health facilities. (Tr. trans. at 47; R. at 246.) The only person LaBauve asked about the Prozac was Joshua's teacher. LaBauve asked the teacher if the teacher knew why Joshua was taking Prozac, and the teacher responded that she did not know. The fact that an eleven year old was on Prozac and was in a mental hospital three years ago should have raised a red flag to LaBauve, and she should have inquired further.
This lack of inquiry leads to the next breach by LaBauve. OCS has a policy which requires their workers to arrange a face-to-face meeting with the accused abuser within *959 24 hours following the allegation of abuse. LaBauve did not accomplish this required face-to-face meeting with Sheila Todd. The majority opinion states that the failure to accomplish this required meeting was "due to circumstances beyond LaBauve's control." This, however, may not necessarily be true. On Oct. 12th, the day the allegation of abuse was made, there was not a face-to-face meeting because Sheila Todd could not arrange a meeting with LaBauve during her work hours. A face-to-face meeting, however, was planned for Oct. 13th at 11:00 a.m., but LaBauve canceled this meeting because she had to complete and deliver other case records to the office of general counsel. So a face-to-face meeting was rescheduled for sometime in the afternoon on Oct. 14th. But, this meeting was also canceled by LaBauve because LaBauve had too many other interviews the same day so she was unable to meet with Sheila Todd. There is even reference in the trial testimony that LaBauve forgot that she made an appointment with Sheila Todd on October 14th. (Tr. trans. at 30, 76-77; R. at 142, 275-76.)
In my opinion, these facts do not support the assertion that LaBauve did not meet with Todd because of circumstances beyond her control. Additionally, the majority opinion states that there were numerous telephone conversations between LaBauve and Todd which may excuse the failure of LaBauve to meet with Todd. The record does not reflect that there were numerous telephone conversations between LaBauve and Todd.
One final issue I would like to comment on is whether the State obtained custody of Joshua. Regarding the determination of this factual issue, I believe that this Court should give deference to the findings of the lower courts. In this case, the trial judge found that LaBauve did take actual custody of Joshua and did place Joshua with his father over the objection of Sheila Todd. From the trial testimony it may be concluded that before the intervention by LaBauve, Sheila Todd had called Joshua's father and asked him to take Joshua for a couple of hours. Thereafter, when LaBauve got involved, LaBauve asked Joshua's father to keep Joshua and prohibited Sheila Todd from having any contact with Joshua until the investigation was over. (Tr. trans. at 76-77, 87-89, 120-39; R. at 275-76, 286-88, 319-38.) Therefore, the lower courts' findings on this issue should not be disturbed.
I would grant a rehearing to review this case anew and give the proper deference to the findings of the trial court. This was a case based entirely on facts which both the district court and the court of appeal found in favor of the plaintiff. Upon a proper standard of appellate review this Court should surely affirm the judgment below.