**08-0700**


**JOYCE MARIE PERRY**

**VERSUS**

**CAPITAL ONE, N. A., ET AL.**


************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 226,595
HONORABLE GEORGE METOYER, DISTRICT JUDGE

************

**JIMMIE C. PETERS**
**JUDGE**

************


Court composed of Jimmie C. Peters, Marc T. Amy, and James T. Genovese, John D. Saunders, and Michael G. Sullivan, Judges.


Genovese, J., dissents and assigns reasons.
Saunders, J., dissents for the reasons assigned by Genovese, J.


**REVERSED AND RENDERED.**


**Charles L. Kincade**
**Attorney at Law**
**One Wood Street**
**Monroe, LA 71201**
**(318) 388-4205**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Joyce Marie Perry**

**Ronald J. Fiorenza**
**Andrew E. Schaffer**
**Provosty, Sadler, deLaunay, Firoenza & Sobel A.C.**
**934 Third Street, Suite 800**
**Post Office Drawer 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Capital One, N. A., et al.**

PETERS, J.

The defendant, Capital One, N. A. (Capital One), as successor in interest to Hibernia National Bank (Hibernia), appeals a trial court judgment awarding the plaintiff, Joyce Marie Perry, $30,000.00 in damages she sustained as a result of her arrest after she attempted to cash a closed account check at one of Hibernia's branch banks in Alexandria, Louisiana. For the following reasons, we reverse the trial court judgment and render judgment in favor of Capital One, dismissing all of Ms. Perry's claims against that defendant.

## DISCUSSION OF THE RECORD

There is little dispute concerning the facts giving rise to this litigation. On December 30, 2005, Ms. Perry, who makes her living as a hair stylist, received a $30.00 check for services rendered from one of her customers, Katherine Clemons. The check was drawn on a Hibernia account in Ms. Clemons' name, but which had been closed since April 26, 2004.

When Ms. Perry attempted to cash the check at the drive-thru window of Hibernia's Masonic Drive branch, the teller at the window immediately recognized that the account was closed. The teller then compared the signature on the check to the signature card on Ms. Clemons' active account and concluded that the signatures did not match. As Ms. Perry waited at the drive-thru window, Deana Huff, the branch manager, attempted unsuccessfully to contact Ms. Clemons by telephone and inquire as to the validity of the check. She then contacted Bobbie Evans Abshire, the bank's operations manager who instructed her to telephone the police, which she did. The police officer who responded to the telephone call arrested Ms. Perry at the scene and transported her to the Rapides Parish Sheriff's Office. Within a short time after her

arrival at the Sheriff's Office, she was released without being booked. Ms. Perry was never formally charged with any offense.

The day after the incident, Ms. Clemons appeared at the Masonic Drive branch and informed Ms. Huff that she had given the check at issue to Ms. Perry as payment for her services, but that the check had been signed by her daughter, not herself. Ms. Huff then instructed Ms. Clemons to contact the law enforcement authorities and let them know the circumstances around which the check was negotiated. When questioned concerning why the check on the closed account had been given to Ms. Perry, Ms. Clemons responded that she was not aware that she still had checks from the old account and had mistakenly used one of them.

Ms. Perry filed suit against Capital One, the arresting officer, and the City of Alexandria.[1] The basis of her claim against Capital One was the failure of its employees to "adequately investigate the matter prior to contacting the police. Specifically [it] failed to ask plaintiff any questions regarding the check prior to calling the police." In its answer to Ms. Perry's petition, Capital One denied liability and affirmatively alleged that Mrs. Clemons was at fault for writing a check drawn on a closed account, in allowing an unauthorized person to sign the check, and in failing to update her contact information.

Following a hearing on the merits, the trial court rendered written reasons for judgment finding Capital One liable to Ms. Perry for failing to adequately investigate the matter prior to notifying the police. It awarded her $30,000.00 in damages based on the embarrassment, humiliation, and emotional distress she suffered as a result of this incident. Capital One perfected this appeal, asserting three assignments of error:

_____

[1]The arresting officer and the City of Alexandria were released from the litigation by summary judgment.

2

1)    The trial court erred because it came to an improper legal determination that Capital One was at fault.

2)    The trial court erred in failing to find that Katherine Clemons was at fault.

3)    The trial court awarded excessive damages to Joyce Marie Perry.

**OPINION**

In its first assignment of error, Capital One argues that the trial court committed an error of law in finding that it owed a duty to Ms. Perry to question her about the check prior to calling the police. We agree, and, in so finding, we need not address either of the remaining assignments of error.

In Louisiana, the determination of liability in negligence actions is decided through a duty/risk analysis. This involves a five-prong determination: (1) whether the defendant owed a duty of care to the plaintiff; (2) whether there was a breach of that duty by the defendant; (3) whether the breach of that duty was a cause-in-fact of the plaintiff's injuries; (4) whether the breach was the legal cause of the harm suffered; and (5) whether the plaintiff suffered damages. *Hanks v. Entergy Corp.*, 06-477(La. 12/18/06), 944 So.2d 564.

In *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095, p. 8 (La. 3/10/06), 923 So.2d 627, 633, the supreme court discussed the duty element:

> A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. *Meany v. Meany*, 94-0251, p. 6 (La.7/5/94), 639 So.2d 229, 233. Whether a duty is owed is a question of law. *Peterson v. Gibraltar Savings and Loan*, 98-1601, 98-1609, p. 7 (La.5/18/99), 733 So.2d 1198, 1204; *Mundy v. Department of Health and Human Resources,* 620 So.2d 811, 813 (La.1993); *Faucheaux v. Terrebonne Consolidated Government*, 615 So.2d 289, 292 (La.1993). In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. *See Socorro v. City of New Orleans,* 579 So.2d 931, 938 (La.1991). The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the

3

claim that the defendant owed him a duty. *Faucheaux*, 615 So.2d at 292; *Perkins*, 98-2081 at 22, 756 So.2d at 404.

A more in depth analysis of the duty element was performed by the second circuit in *Travelers Property Casualty Co. of America v. Pratt*, 41,387 (La.App. 2 Cir. 9/27/06), 940 So.2d 704. There, the court stated:

> The legal inquiry involves a determination of whether the duty of the particular defendant that has allegedly been breached extends to protect against the risk of the harm suffered by the plaintiff, and whether there are legal or policy reasons which may excuse the defendant from the consequences of his negligence. *Peacock's Inc. v. Shreveport Alarm Co.*, 510 So.2d 387 (La.App. 2d Cir.1987), *writs denied*, 513 So.2d 826, 513 So.2d 827, and 513 So.2d 828 (La.1987). A risk may not be within the scope of a duty where the circumstances of the particular injury to the plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty. *Todd v. State Through Social Services*, 96-3090 (La.9/9/97), 699 So.2d 35, *reh. denied*, 96-3090 (La.10/31/97), 701 So.2d 958; *Hill v. Lundin & Associates, Inc.*, 260 La. 542, 256 So.2d 620 (1972). The extent of protection owed by a defendant to a plaintiff is made on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms. *Todd, supra*.

*Id.* at 707-08.

In its written reasons for judgment,[2] the trial court found as fact that the bank employees "firmly believed, after comparing the signature on the check to the signature card on file for the account, that the signature on the check had been forged." On the one hand, the trial court concluded that "the bank's employees perform[ed] inadequate investigation," and on the other, suggested that "the transaction between the bank and [Ms. Perry] should have been terminated the moment that the bank employee realized that the plaintiff was presenting a check for

---

[2]Although the trial court captioned the document filed in the record as **WRITTEN REASON FOR JUDGMENT**, the document also serves as the final judgment in that it contains both the trial court's reasons for rendering judgment in favor of Ms. Perry, as well as language rendering a final judgment corresponding to the findings of the written reasons.

4

payment which was written on a closed account," an action which would have precluded any investigation at all.

Ms. Perry argues on appeal as well that Hibernia failed to adequately investigate the matter by not questioning her about the check before informing the police. We find no authority for holding that a bank owes a duty to a holder of a check which bears a forged signature and which is drawn on a closed account to question the holder as to how he or she acquired the check. Faced with such a situation, the bank employees acted responsibly in contacting law enforcement authorities, and the investigation of the potential crime is their duty, not the bank's. In fact, if any duty was owed, we find that it was owed to Capital One's customer, Ms. Clemons, not to pay on a check containing a presumably forged signature. *Prestridge v. Bank of Jena*, 05-545 (La.App. 3 Cir. 3/8/06), 924 So.2d 1279, *writ denied*, 06-836 (La. 6/2/06), 929 So.2d 1261.

**DISPOSITION**

For the foregoing reasons, we reverse the judgment of the trial court and render judgment in favor of Capital One, N. A., dismissing the claims of Joyce Marie Perry against the defendant. We assess all costs of these proceedings to Joyce Marie Perry.

**REVERSED AND RENDERED.**

JOYCE MARIE PERRY

VERSUS

CAPITAL ONE, N.A., ET AL.

**GENOVESE, J., dissents and assigns the following reasons.**

In this case, an innocent fifty-year-old lady was arrested, handcuffed, and dragged down to the police station for attempting to cash (at defendant's bank) a $30.00 check given to her for services she rendered in her hair salon. This is appalling.

Under La.Civ. Code art. 2315, the foundation for our tort system, one has a duty to act reasonably to avoid harm to others. The majority finds that the bank owed no duty to the plaintiff. However, I find that there was both negligence (a breach of duty) and the intentional tort of false imprisonment in this case. The plaintiff did nothing wrong. The bank, on the other hand, breached its duty to the plaintiff, a legitimate bank customer engaged in a routine banking transaction (cashing a check), by lying to the plaintiff, stalling, and unlawfully detaining her in the "drive-thru" for some thirty minutes until the police came and carted her off in public. All of this over a $30.00 check with a signature that did not match the bank's records.

There were several key facts that were not mentioned in the majority opinion. The plaintiff was stalled and detained in the "drive-thru" for some thirty minutes. The plaintiff had cashed checks at this bank on several prior occasions. The plaintiff gave the bank her driver's license, which the bank kept and would not return to her during the incident. The bank lied to the plaintiff telling her that "the computers were

down." During the thirty-minute wait, the plaintiff offered to leave and come back, but the bank told her that she could not leave. All the bank had or needed to do was simply record the information on the check and driver's license and dishonor the check. If the ($30.00) transaction proved to be fraudulent, then the bank could have easily turned it over to the authorities to apprehend the plaintiff, a local hair stylist. We're not dealing with Bonnie and Clyde here.

The bank certainly breached its duty to act reasonably to avoid harm to the plaintiff. The bank would not give the plaintiff her driver's license and would not let her leave the "drive-thru" for some thirty minutes. This constitutes the tort of false imprisonment which is the unlawful detention of a person without authority. The bank had no legal or other authority to lie to the plaintiff, to mislead the plaintiff, to detain or stall the plaintiff, or to refuse to return her driver's license. This is not a shoplifting case where merchants are legally permitted to detain a suspected shoplifter for sixty minutes until the police arrive as per La.Code Crim.P. art. 215.

In my view, the bank did owe a duty to the plaintiff, and it breached that duty and falsely imprisoned her. Though I find the damage award to the plaintiff to be on the high side, I do not find that the trial court abused its discretion in that regard. I would affirm the trial court judgment in all respects.