# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-297

**JENNIFER THOMAS, ET AL.**

**VERSUS**

**EAGLE PROPERTIES OF ALEXANDRIA, ET AL.**

**********

APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, NO. 116,002
HONORABLE BENJAMIN C. BENNETT, JR., CITY COURT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Maria Anna Losavio**
**Losavio Law Office, LLC**
**1821 MacArthur Drive**
**Alexandria, LA 71315**
**(318) 767-9033**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Jennifer Thomas**
    **George Thomas**
    **Patricia Nelson**

**Leah M. Penny**
**Lauren S. Laborde**
**The Faircloth Law Group, LLC**
**1412 Centre Court, Suite 203**
**Alexandria, LA 71301**
**(318) 619-7755**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **The Trojan Quarterback Club, Inc.**

**GREMILLION, Judge**.

Plaintiffs, Jennifer Thomas and Patricia Nelson, appeal the grant of summary judgment in favor of defendant, the Trojan Quarterback Club, Inc. (Trojan). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Thomas and Nelson filed suit in April 2010, for injuries they sustained in the parking lot of D'Amico's Bingo World in Alexandria, Louisiana. In June 2009, Thomas and Nelson attended a bingo that was being hosted by Trojan to raise funds for an Alexandria, Louisiana high school football team.[1] Trojan leased the building for the event. Thomas and Nelson were assaulted and carjacked by Felton Hurst, who was convicted of aggravated battery, attempted aggravated battery, simple robbery, carjacking, purse snatching, and simple criminal damage to property and sentenced to imprisonment at hard labor.

Thomas and Nelson allege that Trojan's negligence led to the attack for a multitude of reasons, including failure of the hired security guard, off-duty Assistant Chief James Hay of the Alexandria Police Department, to adequately monitor and patrol the premises. Trojan filed a motion for summary judgment in July 2011, to which was attached Assistant Chief Hay's affidavit. Thomas and Nelson filed a Motion to Strike Hay's affidavit, which was denied by the trial court. A hearing on the motion for summary judgment was held on August 25, 2011. The trial court granted summary judgment in favor of Trojan. Thomas and Nelson now appeal.

## ISSUES

Thomas and Nelson assign as error:

---

[1] The property was owned by Eagle Properties of Alexandria, d/b/a D'Amico's Bingo World, but Trojan was hosting the event. Eagle and its insurer were dismissed from the suit on a motion for summary judgment and are not a party to this appeal.

1. The trial court erred in not finding that genuine issues of material fact exist in this matter and thereby granting defendant's Motion for Summary Judgment.

2. The trial court erred in not finding defendant, Trojan Quarterback Club, Inc., negligent in its failure to provide adequate security and/or the security guard breached its duty resulting in injury to plaintiffs.

3. The trial court erred in allowing defendant, Trojan Quarterback Club, Inc., to admit into evidence the late filed affidavit of Josh Marien.

4. The trial court erred in denying plaintiff's motion to strike the affidavit of James Hay.

5. The trial court erred in not admitting plaintiffs' supplemental submission and affidavit of Meaghan Trottter.

## SUMMARY JUDGMENT

*Standard of Review*

On appeal, summary judgments are reviewed de novo. *Magnon v. Collins*, 98–2822 (La. 7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Id*. This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). This means that judgment should be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. *Id*. If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id*.

Material facts are those that determine the outcome of the legal dispute. *Soileau v. D & J Tire, Inc*., 97–318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied*, 97–2737 (La. 1/16/98), 706 So.2d 979. In deciding whether certain facts are material to an action, we look to the applicable substantive law. *Id*. Finally,

2

summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ.P. art. 966(A)(2).

Negligence actions utilize the familiar duty-risk analysis, which requires that a plaintiff prove:

>    (1)   the defendant had a duty to conform his or her conduct to a specific standard of care;

>    (2)   the defendant failed to conform his or her conduct to the appropriate standard of care;

>    (3)    the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries;

>    (4)   the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and

>    (5)   actual damages.

*Christy v. McCalla*, 11-366, p. 8-9 (La. 12/6/11), 79 So.3d 293, 299.

The seminal case dealing with a business's liability for a third party's criminal assault on its premises is *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La.1984). In *Harris*, the supreme court initially set forth the standard businesses are to be held to in general, and in particular, when they hire a security guard to protect patrons of their business:

> [A]ny business which invites the company of the public must take "reasonably necessary acts to guard against the predictable risk of assaults." [*Banks v. Hyatt Corporation*,] 722 F.2d 214 at 227. Also see *Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623 (Tex.App., 1979). A business proprietor owes a duty to those entering its premises to provide a reasonably safe place. *Butler v. Acme Markets, Inc.*, 89 N.J. 270, 445 A.2d 1141 (1982). . . .

> A duty of protection which has been voluntarily assumed must be performed with due care. *Mullins v. Pine Manor College,* 389 Mass. 47, 449 N.E.2d 331 (1983). Whether violence which results from the breach of such a duty is reasonably foreseeable and a cause-in-fact of an injury to a third person is a jury question. *Lay v. Munford, Inc.*, 235 Ga. 340, 219 S.E.2d 416 (1975), reversing *Munford, Inc. v. Lay*, 134 Ga.App. 642, 216 S.E.2d 123 (1975). . . . . A business which undertakes to hire a security guard to protect itself and its patrons *is liable for physical harm which occurs because of*

3

*negligence on the part of that guard. Tucker v. Sandlin*, 126 Mich.App. 701, 337 N.W.2d 637 (1983). When a security guard fails to act in accordance with established policies and procedures and that negligence is a substantial factor in bringing about injury to a third party, it can support a jury finding of causation. *McClure v. Allied Stores of Texas, inc.,* 608 S.W.2d 901 (Tex., 1980).

*Id.* at 1369 (emphasis added).

By 1999, the supreme court was called upon again to address the issue of a business owner's duty toward its patrons regarding crimes committed by third parties in *Posecai v. Wal-Mart Stores, Inc.,* 99-1222 (La. 11/30/99), 752 So.2d 762. In *Posecai*, the supreme court stated: "The sole issue presented for our review is whether Sam's owed a duty to protect Mrs. Posecai from the criminal acts of third parties under the facts and circumstances of this case." *Id.* at 765. After instructing that whether the defendant owed the plaintiff a duty is an initial consideration in any negligence claim, the supreme court stated that it has never "squarely decided whether business owners owe a duty to protect their patrons from crimes perpetrated by third parties." *Id.* at 766. After examining the jurisprudence of other states, the supreme court concluded:

[A]lthough business owners are not the insurers of their patrons' safety, they do have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable. We emphasize, however, that *there is generally no duty to protect others from the criminal activities of third persons. See Harris v. Pizza Hut of Louisiana, Inc.,* 455 So.2d 1364, 1371 (La.1984). This duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry.

*Id.* (emphasis added).

The court stated that foreseeability is determined using a balancing test:

4

The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.

The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. *The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises*, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises.

*Id.* at 768 (emphasis added).

In a footnote in *Posecai*, the supreme court made it clear that a business owner does not automatically *assume* a duty to protect patrons from the crimes of a third party because it employs some types of security measures. Rather, it stated that *Harris* stood for the proposition that a security guard breaches his duty "*when his actions cause an escalation in the risk of harm.*" *Id.* at n. 7 (emphasis added). The supreme court stated that "the restaurant's security guard was negligent because he heightened the risk of harm to Pizza Hut's customers by provoking gunfire from armed robbers who had entered the restaurant." *Id.*

Thus, the question before us on a motion for summary judgment is whether there is any genuine issue of fact that (a) Assistant Chief Hay owed a duty to Thomas and Nelson and, if so, (b) whether he breached his duty of reasonable care in the exercise of his duties as a security officer on the evening of the incident.

**EVIDENCE**

Both parties devoted much of their briefs to arguing over the admission of certain affidavits. Admittedly, after reading the record and the trial court's limited

5

reasons for ruling, it is difficult to ascertain just what evidence the trial court considered in making its decision. Although we ultimately need not rely on any of the affidavits other than those of Assistant Chief Hay and Thomas and Nelson, we will briefly discuss the various affidavits.

At the hearing, plaintiffs' counsel filed a motion to strike the affidavit of Assistant Chief Hay because a portion of it contained hearsay. It was determined at the hearing, through the consent of all parties' attorneys, that only paragraph ten of the affidavit would be stricken. Counsel for plaintiffs specifically responded that she only wanted paragraph ten stricken. The trial court struck the paragraph and, otherwise, denied the motion. Accordingly, plaintiffs cannot now complain about the admission of the affidavit and assignment of error number four has no merit.

Thereafter, defendant's counsel filed an affidavit (of Josh Marien) in lieu of filing a reply memorandum. Plaintiffs' counsel objected to the affidavit as untimely. The trial court permitted the filing and allowed plaintiffs' counsel ten days to file "any supplemental evidence on that subject." The Marien affidavit reveals that Marien is the President of the ASH Trojan Quarterback Club. On the date of the incident, he was working at the club in the sales booth near the front entrance. Gaming had already begun when a worker came in and told Assistant Chief Hay, who had positioned himself in the front interior of the building, near the windows and visible to the interior and exterior entrance, that an altercation was taking place. Prior to the start of gaming, Assistant Chief Hay had patrolled the front exterior of the gaming hall and the parking lot.

Thereafter, on September 6, 2011, plaintiffs filed a supplemental and amending opposition to the motion for summary judgment, attaching the affidavit of Meaghan Trotter. The Trotter affidavit states that she was an employee of the

Bingo World on the date of the incident. Trotter attested that at 6:30 p.m. she was outside the building and noticed a black male walking back and forth near the front of the building; twenty minutes later she saw the same black male outside the building when she went outside to make another phone call. Trotter claims she did not see a security guard outside the building but did see him watching television. She said that she saw the altercation and went inside to inform Assistant Chief Hay of the altercation and that at the time she informed him he was sitting down watching television.

Defendant objected to the supplemental and amending opposition via letter to the trial court asking that the Trotter affidavit be excluded.

On October 13, 2011, defendant's counsel, with the concurrence of plaintiffs' counsel, forwarded a letter to the trial court requesting clarification of what the trial court took into consideration in ruling on the motion for summary judgment (i.e. the Marien and Trotter affidavits). The trial court response via letter dated October 16, 2011, in our opinion, did not clarify the matter. Regardless, the Marien and Trotter affidavits are irrelevant to our determination that Assistant Chief Hay did not owe a duty to plaintiffs. Thus, plaintiffs' assignments of error three and five are rendered moot.

We note that at the summary judgment hearing, the trial court stated that it was agreed among the parties that "it was not necessary to employ a security guard under these circumstances," but that the issue was whether the security guard they did hire was negligent in his actions. We disagree, as we find that Assistant Chief Hay did not owe a duty to plaintiffs in this case.

## DUTY

Plaintiffs' counsel argues that the genuine issue of material fact is "whether or not gaming had started at the time of the altercation, not at the time [Assistant

7

Chief Hay] was notified there was an altercation." Plaintiffs' counsel stated there was no dispute that gaming had started when Assistant Chief Hay was notified, but that the altercation had begun before that, and Assistant Chief Hay was negligent in not patrolling the exterior of the building. Assistant Chief Hay's affidavit stated that he patrolled the parking lot area until gaming began, at which time he situated himself at the front interior of the bingo hall in order to observe patrons inside and immediately in front of the building. He further stated that at approximately 7:05 p.m., gaming had already begun, and he was positioned as noted above when he was notified of an altercation occurring at the rear of the side parking lot. Assistant Chief Hay responded to the scene where the assailant was trying to take one of the victim's purses. The assailant got into the victim's vehicle and put the car in reverse, striking one of the victims in the leg. The assailant put the car in forward in an attempt to flee the scene, which would require that he drive through a crowd of spectators. Assistant Chief Hay then fired two shots into the left front tire of the vehicle and one in the fender, disabling it. He then restrained the assailant and called for police back-up.

Thomas' affidavit states that she and her mother arrived at the bingo hall at approximately 6:45 p.m. and parked in the parking lot. Thomas stated that she saw a black male near the front of the building; that there was no security guard patrolling the outside of the building or parking lot; and that upon exiting her vehicle the assault began. Nelson's affidavit is identical except that she did not notice a black male outside of the building.

Plaintiffs have failed to produce any evidence that there was a foreseeable risk of harm based on previous incidents of crime on the premises, or to show why a charity event for a local school should be responsible for the crimes of third parties. They failed to show how the acts of Assistant Chief Hay were anything

8

other than admirable. There simply is nothing in this record to suggest that Assistant Chief Hay increased a risk of harm to either of the plaintiffs as required by *Posecai*. On the contrary, it appears that he saved them and a crowd of spectators from danger. Additionally, there is no dispute that gaming had begun at the time of the altercation. Assistant Chief Hay was carrying out his duty of protecting the area that posed the most risk—the interior of the bingo hall—where money was changing hands. Simply, Assistant Chief Hay did not have a duty to protect late arrivals to the bingo hall from carjacking. Plaintiffs' assignments of error one and two are without merit.

## CONCLUSION

The judgment of the trial court granting summary judgment in favor of the defendant-appellee, The Trojan Quarterback Club, Inc., is affirmed. All costs of this appeal are assessed against the plaintiffs-appellants, Jennifer Thomas and Patricia Nelson.

**AFFIRMED**.